**James E. DUNCAN, Plaintiff-Appellant,**

v.

**Mr. & Mrs. Harold PECK,**
**Defendants-Appellees,**

**Highlands Coal & Chemical**
**Corp., Defendant.**

No. 83–3790.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 21, 1984.

Decided Jan. 16, 1985.

---

**1136**

Robert F. Ristaneo, Lexington, Ky., for plaintiff-appellant.

James M. Moore, Cincinnati, Ohio, for Highlands Coal & Chemical Corp.

William Wyler, Cincinnati, Ohio, for the Pecks.

Before ENGEL and MERRITT, Circuit Judges, and WISEMAN, District Judge.[*]

MERRITT, Circuit Judge.

In this Fourteenth Amendment claim under 42 U.S.C. § 1983, plaintiff Duncan seeks compensatory and punitive damages from Harold Peck and wife and Highlands Coal and Chemical Corporation for depriving him of property without due process under an Ohio state court default judgment and a writ of execution thereon. Duncan claims that both the judgment and the execution are invalid for lack of notice and personal jurisdiction. We reverse the District Court summary judgment for the defendants holding that Duncan's § 1983 action is barred under res judicata by a prior adverse state court adjudication of Duncan's motion to set aside the default judgment and execution. We remand the case to the District Court for a determination of the constitutional issue concerning notice and personal jurisdiction on the merits.

## I.

The case arises because our defendant Peck was the plaintiff in an action in the Ohio Court of Common Pleas in Cincinnati against our plaintiff, Duncan, a resident of Kentucky, and against two other parties, Edward Gray, a resident of Kentucky, and Duncan-Gray Mining Corporation, a Kentucky corporation. Peck claimed damages of $20,000 for breach of an oral contract promising him stock in Duncan-Gray as a finder's fee for arranging a loan. Before attempting to serve process on the state court defendants, Peck secured a prejudgment attachment order against shares of stock in Duncan-Gray Mining Company's parent corporation, Highlands Coal and Chemical Corporation, shares owned by Duncan but located in the Cincinnati executive offices of Highlands Coal and Chemical.

The attachment was made pursuant to Chapter 2715 of the Ohio Revised Code. This chapter authorizes the clerk of courts to attach the property of nonresidents without bond upon an affidavit by the plaintiff showing the nature and amount of his claim.

The attachment order in this case was executed in November, 1978. In July, 1980, the Ohio Supreme Court declared the procedure set forth in Chapter 2715 invalid under the Due Process Clause because it requires the clerk of courts to issue an order of attachment without adequate notice to the defendant and without providing for any form of judicial review or supervision. *Peebles v. Clement*, 63 Ohio St.2d 314, 408 N.E.2d 689 (1980).

[*] The Honorable Thomas A. Wiseman, Jr., Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation.

After securing the attachment order, Peck then attempted to serve process in the state contract action by certified mail under Ohio Rule of Civil Procedure 4.3(B)(1). When the letters were returned undelivered and after further inquiries allegedly did not disclose a valid current address, Peck served notice by publication in the Cincinnati Court Index, a local legal newspaper circulated in Hamilton County, Ohio. Upon an affidavit by the plaintiff stating that the residence of the defendant is unknown and cannot reasonably be ascertained, Ohio Rule of Civil Procedure 4.4(A) and Ohio Revised Code § 2703.14(G) apparently authorize service by publication when the property of a non-resident individual is attached under Chapter 2715.[1]

Duncan failed to appear within the required time period, he says, because he never received notice of the suit. Peck then took a default judgment against him in May, 1979. A sheriff's sale in September of that year executed the judgment and transferred ownership of the stock to Peck.

In June, 1980, state court defendants Duncan and Gray brought the present action in District Court.[2] They sought an injunction prohibiting Highlands Coal and Chemical from allowing Peck to execute any transaction involving the disputed shares of stock, and damages under 42 U.S.C. § 1983 for deprivation of their property interest in the stock without constitutionally required notice of the state court action, the default judgment and sheriff's sale, and the prejudgment attachment.

Duncan then appeared specially before the Court of Common Pleas and moved to set aside the default judgment on the basis that it was void because he had never received actual notice of the suit and the court was consequently without personal jurisdiction over him. After a hearing, the court set aside the default judgment against Duncan on the ground that he had never been properly served.

Peck then appealed the trial court order setting aside the default judgment to the Ohio Court of Appeals on the ground that Duncan had failed to show that he had a meritorious defense to the contract action if relief were granted and the default judgment set aside. Duncan, in fact, denied the existence of the oral contract. The state court of appeals found that under *GTE Automatic Electric, Inc. v. ARC Indus-*

---

1. Peck's affidavit for service by publication appears as Joint Exhibit 1b, pages 8–10, Joint Exhibits Submitted in Support of Motions for Summary Judgment. In the affidavit, he states that service by publication is pursuant to O.R.C. § 2703.14(G) and Ohio Rule Civ.Pro. 4.4(A) which provide, in pertinent part, as follows:

 O.R.C. § 2703.14(G):
 Service may be made by publication in any one of the following cases: ...
 In any action in which it is sought by a provisional remedy to take or to appropriate in any way property of the defendant, when the defendant is not a resident of this state or is a foreign corporation or his place of residence cannot be ascertained.

 Ohio Rule Civ.Pro. 4.4(A):
 When the residence of a defendant is unknown, service shall be made by publication in actions where such service is authorized by law. Before service by publication can be made, an affidavit of a party or his counsel must be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the defendant is unknown to the affiant and cannot with reasonable diligence be ascertained.

 Upon the filing of the affidavit the clerk shall cause service of notice to be made by publication in a newspaper of general circulation in the county in which the complaint is filed. The publication shall be published at least once a week for six successive weeks unless publication for a lesser number of weeks is specifically provided by law. Service shall be complete at the date of the last publication.

2. Upon his motion, Gray was dismissed from the action below in July, 1981. In addition to the Pecks and Highlands Coal and Chemical, the defendants in this action originally included Duncan-Gray Mining and Robert Pitcairn, Peck's attorney in the state court proceedings. Duncan-Gray was dismissed upon plaintiffs' motion in September, 1980. The District Court granted Pitcairn's motion for summary judgment on September 16, 1982, holding that a private attorney appearing for his client in state court does not act under color of state law and is therefore not amenable to suit under § 1983. Record, Exhibit 60. There has been no appeal from this decision. Mrs. Peck was included as a defendant because she and Mr. Peck jointly hold the disputed stock. Record, Exhibit 3.

*tries, Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), a movant in Duncan's position must demonstrate that he has a valid defense to present if relief is granted and that Duncan had failed to do so. That court held that even if the default judgment was void because entered by a court lacking personal jurisdiction, Duncan was nonetheless not entitled to have it set aside because he had failed to introduce any evidence at the hearing showing that he had a meritorious defense to the contract claim.

Duncan asked the Ohio Supreme Court to review the state court of appeals decision. In his memorandum in support of jurisdiction, Duncan presented two arguments. In the first, he challenged, as a matter of state law, the state appellate court's interpretation of the evidentiary requirements under Ohio Rule 60(B). His second argument was that service by publication on a non-resident was constitutionally defective, and that the trial court had never acquired jurisdiction over him and the default judgment was therefore void., The Ohio Supreme Court refused to hear Duncan's appeal on the ground that no substantial constitutional question was presented. He then sought review of the decision by the United States Supreme Court.. In his jurisdictional statement, Duncan once again attacked the constitutionality of the default judgment and execution. The Court denied review.

In October, 1982, both sides moved for summary judgment in the action in District Court. In a cursory memorandum opinion, the District Court, *citing Castorr v. Brundage,* 674 F.2d 531 (6th Cir.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 240, 74 L.Ed.2d 189 (1982), granted the defendant's motion on grounds that "a § 1983 claimant is precluded by the doctrine of res judicata from relitigating not only the issues which were actually involved in the [state] proceeding, but also the issues which he might have presented .... Plaintiff not only had the opportunity to present his constitutional arguments in state court, he actually did so. He is, therefore, precluded from raising them again in this § 1983 action." Record, Exhibit 66.

## II.

The Ohio Court of Appeals rejected Duncan's jurisdictional challenge by noting that Duncan had not presented a good defense on the merits of the contract action. The Ohio Supreme Court declined to review Duncan's constitutional argument that the Court of Appeals ruling violates due process. The District Court ruled that the final judgment of the state court of appeals was res judicata on the issue of personal jurisdiction and barred litigation of Duncan's constitutional claim in federal court.

Based on the Supreme Court's ruling in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (presence of personal property in state not sufficient to confer in personam or *quasi in rem* jurisdiction in the absence of adequate personal service and minimum contacts with the forum state) we have no reason to question the Ohio Supreme Court ruling in *Peebles v. Clement, supra,* striking down the Ohio attachment statute and overruling previous Ohio law that personal jurisdiction and *quasi in rem* jurisdiction over nonresidents may be obtained by attachment and publication.

■ The District Court erred in ruling that litigation of the similar constitutional issue raised in this case is barred by the res judicata effect of the state Court of Appeals decision. Res judicata encompasses two forms of preclusion, claim preclusion under which "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action," *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981), Restatement (Second) of Judgments § 24 (1982), and issue preclusion, under which a decision precludes relitigation of the same issue on a different cause of action between the same parties once a court decides an issue of fact or law necessary to its judgment.

■ Claim preclusion does not apply to bar the plaintiff from pursuing his section

1983 claim in federal court. The District Court based its decision applying claim preclusion on *Castorr v. Brundage*, 674 F.2d 531 (6th Cir.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 240, 74 L.Ed.2d 189 (1982), which laid down the general rule that a section 1983 plaintiff is precluded from relitigating in federal court not only issues that were actually adjudicated in prior state court proceedings but also issues that also might have been presented but were not. It has been modified by the Supreme Court's recent decision in *Migra v. Warren City School District Board of Education*, —— U.S. ——, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), which held that the Constitution's Full Faith and Credit Clause contained in Article IV as implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires a federal court to give a prior state court judgment the same preclusive effect in subsequent section 1983 litigation as it would be given under the law of the state in which the judgment was rendered. Hence under *Migra* we must first look to Ohio law to determine the preclusive effect of the state court proceedings in this case.

*Norwood v. MacDonald*, 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943), says that the general Ohio rule governing res judicata holds that "an existing final judgment rendered upon the merits ... is conclusive of rights, questions and facts in issue," but if "the two suits do not involve the same ... cause of action, such effect will not be ordinarily given to the prior judgment." The issue in the present case then is whether the cause of action asserted in Duncan's section 1983 suit is the same as that upon which judgment was entered by the state court.

 The original default judgment in state court obviously may not be given preclusive effect since the well established rule in Ohio as elsewhere is that when, as here, the defendant has defaulted for failure to appear, lack of personal jurisdiction may be raised by collateral attack on the default judgment. 1B Moore's Federal Practice ¶ 0.409, at 324 (2d ed. 1983), citing

*Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877). The state trial court's decision setting aside the default judgment also carries no claim preclusive effect, since it was reversed by the state Court of Appeals, and a judgment loses all claim preclusive effect when it is set aside or reversed on appeal. *Quinn v. State*, 118 Ohio St. 48, 160 N.E. 453, 455 (1928); *see Harrington v. Vandalia-Butler Board of Education*, 649 F.2d 434, 438 (6th Cir.1981). Thus, the only relevant judgment for the purposes of claim preclusion is the Ohio Court of Appeals decision reinstating the default judgment on the grounds that Ohio Rule 60(B) had not been complied with.

This judgment of the Ohio Court of Appeals carries no claim preclusive effect in the present action because the two suits are not based on the same cause of action. Under Ohio law, "[T]o constitute a bar, there must be identity not only of subject matter but also of cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter." *Norwood v. MacDonald*, 52 N.E.2d at 71 (1943). The test for determining whether a second suit is for the same cause of action as the first is to consider the facts necessary to sustain the two claims. Although this test construes a cause of action more narrowly than the current Restatement of Judgments (*see* Restatement (Second) of Judgments § 24, at 196–204 (1982)), it has not been limited by the Supreme Court of Ohio, *see Johnson's Island, Inc. v. Board of Township Trustees*, 69 Ohio St.2d 241, 431 N.E.2d 672, 674–75 (1982), and has frequently been applied in this circuit when the issue is the claim preclusive effect of a prior Ohio state court judgment. *See Federal Deposit Insurance Corp. v. Eckhardt*, 691 F.2d 245, 248 (6th Cir.1982); *Francis H. Fisher v. Midwesco Enterprise, Inc.*, 477 F.Supp. 169, 172 (S.D.Ohio 1979). Under *Migra, supra*, this is the standard we should apply.

Here, the claim decided by the Ohio Court of Appeals involved the sufficiency of the evidence presented at the hearing before the trial court on the motion to set aside the default judgment. In particular, without discussing the validity of the default judgment, the Court of Appeals held that Duncan was not entitled to have it set aside because he had failed to present evidence showing that he could prevail on the merits of the underlying contract claim. The decision turned upon considerations which are irrelevant to the present action. Duncan's ability to prevail on the merits of the underlying contract is not the same question as his claim that he never got notice of the action and that the constitutional prerequisites to personal jurisdiction had not been met.[3]

### III.

In addition to the defense of res judicata, the defendants also object to the District Court's jurisdiction. In order to state a claim under section 1983, the plaintiff must establish (a) the deprivation of a right protected by statute or the Constitution, and (b) that the defendant acted under color of state law. Defendants assert that Duncan has failed to allege action under color of state law, and that the District Court therefore lacks subject matter jurisdiction under section 1983. They contend that they merely pursued private attachment, publication and execution remedies provided by Ohio law at the time. They focus particularly on the state prejudgment attachment procedure which was declared unconstitutional by the Ohio Supreme Court in *Peebles v. Clement*, 63 Ohio St.2d 314, 408 N.E.2d 689 (1980), arguing that this decision does not retrospectively invalidate that procedure as of November, 1978, the date they used it to attach Duncan's stock. The more general argument is that this procedure was presumptively constitutional as of that date, and that institution by a private litigant of presumptively valid state judicial proceedings does not constitute action un-

der color of state law within the contemplation of section 1983.

Although this general principle was earlier accepted by the Fifth Circuit, *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir.1981) ("no [state action] is involved when the state merely opens its tribunals to private litigants" unless there are improper motives); *see also Welsh v. Kinchla*, 577 F.2d 767 (1st Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978) (absent showing of malice, private party who follows presumptively valid state procedures not liable for damages under § 1983); *Kacher v. Pittsburgh National Bank*, 545 F.2d 842 (3d Cir.1976) (same); *Tucker v. Maher*, 497 F.2d 1309 (2d Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974) (same); *Rios v. Cessna Finance Corp.*, 488 F.2d 25 (10th Cir.1973) (same), the majority opinion by Justice White in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), rejects the reasoning in that case. The logic of the earlier lower court case would make the state action finding turn on the private litigant's motive in availing himself of state provided procedures, a question that goes not to state action but rather to the state of mind required to find a private litigant liable for damages.

In *Lugar*, the Court found that conduct satisfying the Fourteenth Amendment state action requirement necessarily meets the § 1983 under color of law standard. 457 U.S. at 935, 102 S.Ct. at 2753. The Court adopted a two-part test for determining when conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State and state action found:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.

---

**3.** Having found that res judicata is no bar to litigation of the jurisdictional issue in federal court, we need not decide whether a contrary

application of the res judicata doctrine would itself violate due process.

In *Sniadach, Fuentes, W.T. Grant,* and *North Georgia,* for example, a state statute provided the right to garnish or to obtain prejudgment attachment, as well as the procedure by which the rights could be exercised. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

457 U.S. at 937, 102 S.Ct. at 2754.

Under this framework of analysis, the Court found that while "private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action," from which it followed that "a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.* at 941, 102 S.Ct. at 2756. The Court held that the *Lugar* plaintiff presented "a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute." *Id.* at 942, 102 S.Ct. at 2757.

▌ The Court's decision in *Lugar* is thus directly contrary to the defendants' position in this case. The defendants originally requested summary judgment on the ground that plaintiff had failed to allege action under color of state law and that the District Court therefore lacked subject matter jurisdiction. The District Court properly applied *Lugar* and denied the motion, reasoning that "defendants Mr. and Mrs. Peck are in the same position as the defendant in *Lugar.* Accordingly, it is apparent that the Pecks are not entitled to judgment as a matter of law." Record, Exhibit 60.

Although under *Lugar* Duncan does not state a claim under § 1983 insofar as he is alleging abuse of state process by the defendants, he does state a cause of action under § 1983 in his challenge to the constitutionality of the Ohio procedures authorizing service by publication when the defendant is a non-resident whose property has been attached as a provisional remedy. As the Court explained in *Lugar:*

> If a defendant debtor in state-court debt collection proceedings can successfully challenge, on federal due process grounds, the plaintiff creditor's resort to the procedures authorized by a state statute, it is difficult to understand why that same behavior by the state-court plaintiff should not provide a cause of action under § 1983. If the creditor-plaintiff violates the debtor-defendant's due process rights by seizing his property in accordance with statutory procedures, there is little or no reason to deny to the latter a cause of action under the federal statute, § 1983, designed to provide judicial redress for just such constitutional violations.

457 U.S. at 934, 102 S.Ct. at 2752. Since there is no doubt that Duncan could challenge as state action the validity of a default judgment and execution which were based on service by publication, *see, e.g., Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982); *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the due process claim therefore sufficiently alleges action under color of law under § 1983.

Although we need decide only the res judicata and under color of law issues and not any issues respecting liability, we would call to the attention of the District Court footnote 23 of the *Lugar* opinion which points out, without deciding, that a private litigant may have some type of good faith privilege which insulates him from some forms of damage liability. In the absence of any trial on the damage

issue, we will not attempt to decide any such questions now.

Accordingly, the judgment of the District Court on the res judicata issue is reversed, and on the "under color of law issue" is affirmed, and the case is remanded to the District Court for further proceedings.