**Christopher COE, et al., Plaintiffs,**

v.

**Linda ZIEGLER, et al., Defendants.**

**Civ. No. C–1–84–1463.**

United States District Court,
S.D. Ohio, W.D.

March 17, 1987.

John H. Metz, Cincinnati, Ohio, for Michael and Christopher Coe.

Frank J. Wasserman, Trial Atty. James O'Connor, Co-Counsel, Legal Aid Soc. of Cincinnati, Cincinnati, Ohio, for Mary, Danny, and Sondra Smith.

Hugh Frost, II, Robert H. Johnstone, Asst. City. Sol., Michael E. Maundrell, Cincinnati, Ohio, for County Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAVID S. PORTER, Senior District Judge:

This case, before the Court pursuant to 42 U.S.C. § 1983, is a constitutional challenge to the Ohio Child Removal Statute, Ohio Rev.Code § 2151.33 and rules thereunder. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343(3) and (4). The issues were bifurcated for trial pursuant to Federal Rules of Civil Procedure 42(b), with the claim for injunctive relief tried first, and the claim for damages to be tried at a later date.

Prior to trial we denied plaintiffs' motion for summary judgment (Doc. 57). In a separate order we held the defendants O'Connor, Ziegler, Connelly, and Hart to be immune from damages liability in this suit (Doc. 34).

This case came on for trial December 16 and 17, 1986. It was tried to the Court and is submitted on the basis of the testimony adduced at trial, the exhibits, and the submissions of the parties. Additionally, defendants' motion to dismiss plaintiffs' claims for injunctive and declaratory relief is fully briefed (Docs. 72, 75, 78, 79 81) and pending, and is ruled on herein. The following constituties Findings of Fact and Conclusions of Law pursuant to Federal Rules of Civil Procedure 52.

## FINDINGS OF FACT

1. Plaintiffs are a class of parents who are under a present threat of having their children removed from their legal and physical custody pursuant to Ohio Rev. Code § 2151.33, and those parents whose children are currently in the custody of the Hamilton County Department of Human Services pending a hearing of a complaint against the parents.

2. Plaintiff Michael Coe is a resident of Hamilton County, Ohio, and a citizen of the United States. He is the natural father and legal custodian of plaintiff Christopher Coe. Christopher Coe is a minor who resides with Michael Coe. Christopher Coe brings this suit through Michael Coe as his next friend. These plaintiffs have adopted pseudonyms for purposes of this litigation to maintain the confidentiality of plaintiffs' Juvenile Court records.

3. Plaintiff Mary Smith is a resident of Hamilton County, Ohio, and a citizen of the United States. She is the natural mother and legal custodian of plaintiffs Sondra Smith and Danny Smith. Sondra and Danny Smith bring this action through Mary Smith as their best friend. These Plaintiffs have adopted pseudonyms for purposes of this litigation to protect the confidentiality of their Juvenile Court records.

4. Defendant John P. O'Connor is judge of the Hamilton County Common Pleas Court, Juvenile Division. In that capacity, he is ultimately responsible for policies established or enforced by employees or agents of said Court. The powers of that Court are set out at O.R.C. § 2151.07.

5. Defendant Linda Ziegler is the social worker with the Hamilton County Department of Human Services (hereinafter "HCDHS"), to whom the case of the plaintiffs had been assigned for investigation. At all times relevant hereto, Ms. Ziegler was acting within the course and scope of her employment with HCDHS.

6. Defendants Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4 are employees and/or agents of the Hamilton County Department of Human Services who were in charge of or otherwise involved in the supervision of the minor plaintiffs named herein during the period of said detention of said minor plaintiffs at the Allen House, as alleged in this Complaint. At all times relevant hereto, they were acting within the scope of their employment and in furtherance of their employer's business.

7. Defendant Kathleen Byrne is the Section Chief of the Family and Children Services Division of the HCDHS. In that capacity, she has immediate responsibility for the policies and practices regarding the taking into custody of children prior to adjudication and for their care and placement after they are taken into custody.

8. Defendant Seth P. Staples is Director of the HCDHS, an official agency of Hamilton County, Ohio. In that capacity, he has ultimate responsibility for the policies and practices of the Family and Children Services Division complained of herein. The general powers and duties of defendant Staples are set out at O.R.C. § 5153.01 et seq.

9. Defendant Hamilton County Department of Human Services is the public child welfare agency operated by Hamilton County, Ohio, which, pursuant to Ohio statutes and regulations of the Ohio Department of Human Services, has direct responsibility for providing child welfare and protection services. The powers and duties of HCDHS regarding child welfare are set forth in Ohio Rev.Code § 5153.16.

10. Hamilton County, Ohio is a political entity which is responsible for, *inter alia,* creating and maintaining the Hamilton County Department of Human Services.

11. Defendants Norman Murdock, Robert Taft and Joseph DeCourcy are County Commissioners of Hamilton County, Ohio, and in their official capacities are ultimately responsible for the policies and practices of county agencies, including HCDHS.

12. Defendants Officer Connelly and Officer Hunt are police officers employed by the City of Cincinnati Police Department who participated in the removal of minor plaintiffs from their home. At all times relevant hereto, they were acting within the scope of such employment.

13. The basic set of facts set out in our order denying summary judgment was supported at trial, and are incorporated below.

On October 5, 1983, defendant Linda Ziegler, who was employed as an intake worker with defendant Hamilton County Department of Human Services (HCDHS), was assigned to investigate a complaint concerning minor plaintiff Christopher Coe (tr. 115).

On October 7, 1983, Ziegler conducted an investigation at the plaintiffs' residence regarding neglect allegations involving plaintiff parents Michael Coe and Mary Smith (tr. 112–129).

At the conclusion of the investigation, Ziegler called defendant Judge John P. O'Connor of the Hamilton County Common Pleas Court, Juvenile Division (tr. 129–30). During the telephone conversation, Judge O'Connor orally ordered the removal of the

three minor plaintiffs (including Sondra Smith) from the physical custody of their parents (tr. 130). The children were removed with the assistance of the two defendant police officers (tr. 114).

Minor plaintiffs were placed in Allen House, a shelter care facility that provides juvenile children with temporary shelter (tr. 202).

On October 11, complaints were filed by defendant Ziegler alleging the children were dependent, neglected or abused (See Witness Summary of Linda Ziegler, doc. 70). On the same day, an *ex parte* hearing was conducted and Judge O'Connor issued an order continuing the state's temporary custody of the minor plaintiffs. *Id.*

Finally, on October 14, 1983, an adjudicatory hearing was held and the emergency placement of the minor plaintiffs was continued. *Id.*

Ultimately, the children were returned to their parents, and, on February 28, 1984 the complaints filed by HCDHS were voluntarily dismissed (tr. 205).

14. Plaintiffs' exhibit 11, attached as Appendix A, purports to be the adopted written practice of the Juvenile Court regarding emergency child removal orders. Plaintiffs concede that plaintiffs' exhibit 11 satisfies constitutional requirements (Tr. 316).

## CONCLUSIONS OF LAW

On September 3, 1986 this Court denied plaintiffs' motion for summary judgment challenging the constitutionality of the Ohio child removal statute. The Court concluded that the statute was not unconstitutionally vague, nor facially unconstitutional, and held that there existed a genuine issue of material fact whether the statute violated procedural due process as applied. We also concluded that:

The state's interest in removing a child from its home prior to hearing becomes 'compelling' only when the child is in danger of immediate or threatened psychological, emotional, or physical harm. The preadjudicatory removal of children from their families for reasons which fall below this standard violates the constitutional protection of family integrity.... (Citations omitted.)

*See Doe v. Staples,* C–1–81–16 (S.D.Ohio, June 23, 1981), *aff'd in part and rev'd in part,* 706 F.2d 985 (6th Cir.1983).

At trial, the parties presented evidence whether the current practice of the Juvenile Court in ordering the emergency removal of children satisfies the above stated constitutional requirement. Defendants also argued that plaintiffs' claim for injunctive relief must be dismissed on grounds of res judicata/collateral estoppel and mootness. We have concluded that the mootness question accurately frames the controlling issue of this case, which is whether the defendants have permanently implemented constitutionally permissible child removal procedures. We deal with the res judicata/collateral estoppel first.

■ Defendants' res judicata/collateral estoppel argument is based on the contention that plaintiffs' claims are barred by res judicata and collateral estoppel since plaintiffs allegedly had a full and fair opportunity to litigate the constitutional issues raised by this suit in an earlier state court proceeding. Defendants claim that the petition for a writ of habeas corpus filed by the named plaintiffs in this action on October 11, 1983 operates as a bar to the claims of plaintiff class members in this action. Defendants' contention is clearly incorrect.

Under *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), a federal court is required "to give a prior state court judgment the same preclusive effect in subsequent Section 1983 litigation as it would be given under the law of the state in which the judgment was rendered. Hence, under *Migra* we must first look to Ohio law to determine the preclusive effect of the state court proceeding in this case." *Duncan v. Peck,* 752 F.2d 1135 (6th Cir. 1985), *citing, Migra, supra.*

The Sixth Circuit has adopted *Norwood v. MacDonald,* 142 Ohio St. 299, 52 N.E.2d 67, 71 (1943), as the relevant touchstone in this regard. *Duncan, supra.* In order for

an Ohio judgment to carry a preclusive effect in the present action, the state case and the federal case must both be based on the same cause of action, even though each action relates to the same subject matter. *Norwood, supra* at syllabus para. 2. There also must exist an identity of parties. *See infra.* The burden is on the defendants to plead and prove the affirmative defense of res judicata.

. Defendants have not proved that the cause of action stated in a writ of habeas corpus of a child is the same as that stated in the § 1983 case *sub judice.* Habeas corpus is an extraordinary remedy that may be utilized when the Order of Commitment of Custody attacked is void, because made without jurisdiction, *In re Ramsey,* 164 Ohio St. 567, 571, 132 N.E.2d 469, 473 (1956), and where there is no adequate remedy at law. *In re Davis,* 18 Ohio St.3d 226, 480 N.E.2d 775, 776 (1985).

Plaintiffs argue persuasively that the only cause of action which the named plaintiffs could have raised in their habeas corpus complaint was whether the parents were unlawfully deprived of the custody of their children. By contrast, the instant § 1983 claim alleges that the Hamilton County Welfare Department engaged in a practice of removing children prior to the filing a complaint that was unconstitutional. Res judicata is therefore not a bar to the instant action. *See Norwood, supra.*

█ Likewise this action is not barred on grounds of collateral estoppel. Ohio law requires an identity of parties in order for res judicata or collateral estoppel to apply. *Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, Syllabus ¶ 1, 443 N.E.2d 978 (1983). Since the class plaintiffs who are parties to this action for injunctive relief were not parties to the original action, collateral estoppel does not apply.

Therefore defendants' motion to dismiss the case on grounds of res judicata and collateral estoppel is denied.

Defendants' next ground for dismissal is that the plaintiffs' action is moot. Defendant argues that the procedures currently used by the Hamilton County Juvenile Court to remove children on an emergency basis fully complies with constitutional requirements. (Defendants' Motion for Dismissal, Doc. 72 at 4). These procedures are set forth in plaintiffs' Exhibit 11, attached hereto as Appendix A. In *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), the Supreme Court set forth the following rules governing mootness:

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 [89 S.Ct. 1944, 1951, 23 L.Ed.2d 491] (1969). We recognize that, as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.,* does not make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 [73 S.Ct. 894, 897, 97 L.Ed. 1303] (1953). But jurisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation ..." that the alleged violation will recur, *see id.,* at 633; see also *SEC v. Medical Committee for Human Rights,* 404 U.S. 403 [92 S.Ct. 577, 30 L.Ed.2d 560] (1972), and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. See, *e.g., DeFunis v. Odegaard,* 416 U.S. 312 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974); *Indiana Employment Security Div. v. Burney,* 409 U.S. 540 [93 S.Ct. 883, 35 L.Ed.2d 62] (1973).

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

The burden of demonstrating mootness "is a heavy one." See *United States v. W.T. Grant Co., supra* [345 U.S.], at 632–633 [73 S.Ct., at 897].

█ Since plaintiffs have conceded that the procedures outlined in plaintiffs' exhibit 11 satisfy constitutional requirements,

we agree with defendants that this case *would* be moot if those procedures have been permanently implemented. However, there is no evidence currently before the court except for the inconclusive testimony of Judge O'Connor that the procedures contained in exhibit 11 have been implemented on a permanent basis. Judge O'Connor did not know whether the imminent harm standard for child removal, first set forth in *Doe v. Staples, supra,* and adopted by this Court had ever been reduced to writing by any personnel of the court, instructing the Juvenile Court referees of the correct standard to apply in emergency removal decisions. Likewise, Judge O'Connor could not agree that the imminent risk of harm standard, which is expressed in exhibit 11, was the appropriate standard to apply (tr. 268–271). Judge O'Connor also admitted that the procedures in exhibit 11 are subject to further definition, expansion *and limitation* (tr. 285–287). Exhibit 11 is an untitled and unsigned document. There is no court order that would indicate that the policies and procedures expressed in plaintiffs' exhibit 11 are permanent (tr. 288).

A court speaks through its journal. Plaintiffs accurately point out that plaintiffs' exhibit 12, a Juvenile Court journal entry styled MJ 84–64 and signed by both Juvenile Court judges does formally implement one procedure reflected in plaintiffs' exhibit 11, namely, that once a child is admitted to shelter care upon an ex parte order, a hearing will be held the next court day or within 72 hours. (See tr. 288–89.) Clearly, the formal entry and implementation of only one aspect of plaintiffs' exhibit 11 reinforces the conclusion that the other procedures contained therein have not been formally and permanently implemented. We therefore find that defendants have not met their heavy burden of proving this case is moot.

The defendants, arguing that the procedures outlined in exhibit 11 have been implemented by the Juvenile Court, cannot be heard to argue that it would be unfair or onerous for this Court to order the formal implementation of those procedures. Likewise, plaintiffs concede that the procedures satisfy minimum constitutional requirements. We therefore conclude that the appropriate relief in this case is to order exhibit 11 to be formally and permanently implemented.

## ORDER

A court speaks through its journal. Therefore, unless the Hamilton County Juvenile Court journalizes, and thereby formally and permanently implements the policies and procedures expressed in plaintiffs' Exhibit 11 within twenty days, an injunction will issue from this Court ordering the implementation of those procedures. If the Juvenile Court so orders, the equitable relief sought by plaintiffs will be denied.

SO ORDERED.

## APPENDIX A

Due to certain recent appellate decisions and to insure due process to parties, necessary revisions are being made in the dependency/paternity areas.

At present, the procedures in three categories are undergoing significant change. These categories are: 1. the filing of initial plans, comprehensive reunification plans (CRP), modifications and other materials with the court; 2. service of civil summons and, 3. predispositional temporary orders. A brief outline of the new procedures is included for your benefit. Please bear in mind that these new procedures may be altered or expanded in the near future until they become settled and can be assessed to determine if they fulfill their purpose.

I. THE FILING OF INITIAL PLANS, CRP's, MODIFICATIONS, AND OTHER MATERIALS WITH THE COURT.

    A. All initial plans, CRP's, modifications, motions, etc., which are to be part of the record, must be filed with the *Clerk of Juvenile Court.* These items are *not* properly filed when given to the dependency case manager or the referee.

    B. The referee cannot modify a filed document by altering the original in court. Alterations can be made by the referee, but only as written in a court entry. If the alterations are numer-

ous, an amended CRP may need to be filed, again in the clerk's office. Any alterations or amendments of a CRP, must be then sent to the parents who have ability to object within a certain time frame.

C. The agency may informally review a proposed CRP with the referee before filing to help avoid later alterations.

D. After filing the initial plan, the Court will conduct a review of the plan. The Court will formally approve and incorporate the initial plan in a judgment entry.

E. After filing the CRP, the Court will conduct a review of the plan and consider parental objections if any. A formal hearing may be held. In any event, the Court will formally approve and incorporate the CRP in a judgment entry.

F. Each initial plan, CRP and modification will be reviewed in a timely fashion so that only minimal disruption will result from the delay required for review.

## II. SERVICE OF CIVIL SUMMONS

A. At preliminary hearings, a party who requested publication service will be asked what reasonable efforts were made to determine the name and address of the person served by publication.

B. Upon the filing of a complaint, the petitioner must instruct the clerk concerning what type service is requested. (Simple form to be provided) (Precipae)

C. When an unsatisfactory return is received by the clerk, (refusal, unclaimed mail), the clerk will notify the party in writing and the party must then give further written instructions to the clerk. (Simple form to be provided) (Precipae)

D. All written communication between the party and the clerk will be documented and become part of the legal record.

E. Service by certified mail will instruct the served party to appear on a date at least 28 days after mailing. If unclaimed or refused, another 28 day period may be required after a second mailing before the Court can effectively act in the served party's absence.

F. Service will be reviewed by the referee at the earliest hearing and statements regarding service will be made a part of the Court's entry.

G. Unfortunately, the unique nature of Juvenile Law will lead to seemingly unsolvable conflicts in statutory time periods. Each such incident will need to be individually reviewed and decided by the Court.

## III. PREDISPOSITIONAL TEMPORARY ORDERS (E.O.)

A. A complaint must be filed before the Court will issue any order, except in rare cases where the child is in imminent life threatening danger, and the Court must act under the doctrine of Parens Patriae to protect the child.

B. Whenever a temporary order is sought, a motion must be filed with the Court setting out the reasons a temporary order is necessary.

C. Wherever possible, a copy of the motion for a temporary order should be served upon the parties and a hearing on the motion should be scheduled by the Court. If the delay caused by scheduling would place a child at risk, the Court stands ready to "squeeze in" a hearing during normal work hours. Such a "squeezed in" hearing can be arranged with the dependency case manager and the parties can then be instructed to appear immediately before the Court.

D. Whenever a temporary order is sought, and the party is seeking an *ex parte hearing* the motion should set out the reasons necessitating an ex parte hearing.
1. The court will not hear a motion for a temporary order, *ex parte*, unless 1. The child is in immediate danger and, 2. The other parties (parents) are unavailable for a hearing or the delay caused by such a hearing would place the child at risk.
2. Wherever possible, only a judge will issue ex parte temporary orders

and referees will only issue temporary orders where all parties are present.

3. During working hours, the judge will conduct the ex parte hearing on the record, or if issuing the order in chambers, the testimony will be preserved by a referee. In either case, a written entry will result.

4. During non-working hours, the judge will conduct the ex parte hearing on the telephone and may issue a verbal order.

5. If an ex parte temporary emergency order is issued by the judge, a hearing will be scheduled the next court day or within 72 hours, whichever is earlier. The hearing will be at 8:30 a.m. before a referee at the Alms & Doepke Building. The party seeking the order is responsible to make reasonable efforts to notify the parties of the time and place of this hearing. The purpose of the hearing will be to determine whether the emergency order should continue pending further hearings. The hearing will be informal and without regard to rules of evidence, but parties will be able to cross-examine witnesses testifying at the hearing, and may present witnesses in their behalf.

E. When a child is removed from his parent by a law enforcement officer or other as statutorily authorized, the Court upon the filing of a complaint and notification that such removal has occurred, will hold a hearing the next court day or within 72 hours whichever is earlier. The hearing will be at 8:30 a.m. before a referee at the Alms & Doepke Building. The party filing the complaint is responsible to make reasonable efforts to notify the parties of the time and place of this hearing. The purpose of this hearing will be to determine whether the removal should continue pending further hearings. The hearing will be informal and without regard to rules of evidence, but parties will be able to cross-examine witnesses testifying at the hearing and may present witnesses in their behalf.

F. Whenever a temporary order is issued under paragraphs C, D, or E, an adjudicatory hearing will be scheduled within 10 days of the filing of the complaint or removal of the child from the parents, whichever is appropriate.

1. The adjudicatory hearing may be continued for good cause shown.

2. At this hearing, the issue of whether the temporary order should continue will again be reviewed by an informal hearing not subject to the rules of evidence. The parties may cross-examine witnesses who testify at the hearing and present witnesses in their behalf.

3. Hopefully, by this hearing, counsel for the parties and a guardian-ad-litem will be present.

G. Further hearings to review the continuation of a temporary order may be held upon motion by any party.

Complaint (most cases)
Juv. Rule 1, 10, & 13

No Complaint
only where imminent life threatening
danger and police can't maintain
situation

EX PARTE HEARING

Juv. Rule 13

Juv. Rule 13

Informal full hearing with parents
present "squeeze" in to referee.
Child to be removed only where there
is an immediate risk of physical or
emotional harm.  No evidence rules

Where parent is unavailable or delay
would place child at risk.
1. Should be heard by judge only
2. Day - Judge to record or referee
   to preserve testimony
3. Night or Weekend - Judge to hold
   verbal hearing on phone, swear
   witness, give verbal order

"72 hour hearing" Juv. Rule 7
should child remain in shelter
care?  Substantial flisk of
physical or emotional harm.
Informal.  No evidence rules

Adjudicatory "10 Day Hearing" Juv. Rule 29

Should be adjudicatory but can be continued
for good cause.  Must review if child needs
continued seperation.

"7 (G)" Hearing  - Juv. Rule 7 (G)

any party may request hearing at anytime
to determine if child continues to need
shelter care.

Adjudicatory  - Juv. Rules 29 & 34
·Dispositional hearings