Filed 3/9/16  Chatman v. Arrowhead Credit Union CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

GEORGE C. CHATMAN,

 Plaintiff and Appellant,

 v.

ARROWHEAD CREDIT UNION,

 Defendant and Respondent.

E063264

(Super.Ct.No. CIVDS1413324)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Reversed.

George C. Chatman, Plaintiff and Appellant in pro. per.

Anderson, McPharlin & Conners and Colleen A. Déziel for Defendant and Respondent.

In response to a withholding order issued by the Franchise Tax Board (Board), Arrowhead Credit Union (Arrowhead) allegedly took money from George C. Chatman's account and turned it over to the Board.  Chatman then filed this action against Arrowhead, claiming that Arrowhead's action violated due process as well as specified

federal and state statutes. The trial court sustained Arrowhead's demurrer to the operative complaint, without leave to amend, reasoning that, under state statutory law, Arrowhead was required to comply with the withholding order and was immune from any liability arising out of its compliance.

Chatman appeals. He contends (among other things) that the trial court erred because, under the supremacy clause, his claims that are based on due process and federal statutory law override the state statutes on which the trial court relied.

We agree. Hence, we will reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

In September 2014, Chatman filed this action against Arrowhead.

In January 2015, Chatman filed an amended complaint (complaint). It alleged that on June 9, 2014, and again on July 22, 2014, Arrowhead notified him that it had received a withholding order from the Board. Chatman explained to Arrowhead "that this action was a violation of [his] rights and the law." Nevertheless, Arrowhead took money from Chatman's account and turned it over to the Board.[1] This was allegedly unlawful because:

1. The withholding order constituted a notice of levy, which is ineffective without a writ.

_____

[1] The complaint does not specify the amount of money taken, but the parties agree that it was $440.01.

2

2. The Board, as an administrative agency, could not seize property without judicial process.

3. The withholding order was void because it was not on Judicial Council form WG-022.

4. The account contained Social Security benefits, which, under 42 United States Code section 407(a), are not subject to execution, levy, attachment, garnishment, or other legal process.

5. Arrowhead harassed Chatman, misrepresented the status of the debt, and used unfair, unconscionable or deceptive means to collect a debt, in violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) and the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.)

The complaint also alleged that all of Arrowhead's actions violated due process.

All of these allegations were lumped together as a single cause of action "for violation of civil rights of collection of alleged debt." (Capitalization altered.)

Arrowhead demurred, on grounds including that:

1. Arrowhead was statutorily required to comply with the withholding orders, subject to a penalty in the amount of the tax due, under Revenue and Taxation Code sections 18670, subdivision (d) and 18672.

2. Arrowhead was statutorily immune under Revenue and Taxation Code section 18674, subdivision (a).

3

3.  The Rosenthal Fair Debt Collection Practices Act did not apply because Arrowhead was not trying to collect a consumer debt.

At the hearing on the demurrer, the trial court cautioned Chatman: "[Y]our fight . . . would seem to be . . . with the Franchise Tax Board, as opposed to Arrowhead Credit Union." It then sustained the demurrer without leave to amend, citing Revenue and Taxation Code sections 18672 and 18674, subdivision (a). Thus, it entered judgment against Chatman and in favor of Arrowhead.

## II

## THE TRIAL COURT'S RULING VIOLATED THE SUPREMACY CLAUSE

The trial court sustained the demurrer for two reasons: (1) Arrowhead was required by state statute to comply with the withholding order; and (2) Arrowhead was immune by state statute from liability for compliance with the withholding order.

With regard to Arrowhead's statutory obligation to comply, the trial court cited Revenue and Taxation Code section 18672, which, as relevant here, provides: "Any . . . person failing to withhold the amount due from any taxpayer and to transmit the same to the Franchise Tax Board after service of a notice . . . is liable for those amounts." (See also Rev. & Tax. Code, § 18670, subd. (d) ["Any corporation or person failing to withhold the amounts due from any taxpayer and transmit them to the Franchise Tax Board after service of the notice shall be liable for those amounts."].)

With regard to Arrowhead's statutory immunity, it cited Revenue and Taxation Code section 18674, subdivision (a), which, as relevant here, provides: "Any . . . person

4

paying to the Franchise Tax Board any amount required by it to be withheld is not liable therefor to the person from whom withheld . . . ."

Chatman's brief is not a model of clarity. Nevertheless, fairly read, it adequately communicates the contention that the state statutory requirements that Arrowhead take his money and give it to the Board violate due process in this case, and thus are invalid under the supremacy clause. Thus, for example, he argues: "[A]ny Regulations, Statute or Laws that infringes or violates Constitutional Rights, [Arrowhead] were not obligated to obey . . . ." Likewise, he argues: "[Arrowhead] presumed that no laws can bring restriction to their actions because of regulations 18670, 18670(d) of the [Revenue and Tax Code] they have to follow but to create this presumption does not mean to escape from constitutional restriction . . . ." "The court judgment of favor of [Arrowhead] . . . is erroneous because the court ha[s] placed [the Revenue and Tax Code] above and supreme to [f]ederal [l]aw . . . ."

He also contends that the taking of his money violated 42 United States Code section 407, subdivision (a) (section 407(a)), which, as relevant here, provides that social security benefits are not "subject to execution, levy, attachment, garnishment, or other legal process . . . ." In this context, too, he at least implicitly relies on supremacy: "The Superior Court Judge erred in his decision to favor [Arrowhead] without citing a specific statute that negate or nullifies Federal law 42 U.S.C. 407(a) . . . ."

Finally, he cites the supremacy clause expressly: "Without due process of the Law, *anything in the constitution or Laws of any state to the contrary notwithstanding*

5

*Article VI U.S. Constitution*, Depriving the Appellant of Life, Liberty and Property by a piece of document unsigned, without Legal standing at all subjects [Arrowhead] to . . . serious damages." (Italics added.)

Arrowhead recognizes that Chatman is relying on due process and on section 407(a). It even acknowledges that "he may be attempting to argue that the California Revenue and Taxation Codes somehow contradict or violate the Constitution." (Italics omitted.) However, it does not respond to this argument, other than to dismiss it as "irrelevant." It asserts: "[I]f [Chatman] wanted to question the Constitutionality of the statutes . . . , then he should have litigated those issues with the [Board]. . . . [Arrowhead] is not the proper party for such challenges." It cites no authority for this proposition.

Assuming that Arrowhead's actions violate due process, the fact that they were compelled by a state statute cannot validate them.[2] Quite the contrary — the fact that they were compelled is what makes Arrowhead a state actor and thus a proper party to this action. A private party's actions can be attacked as unconstitutional if the state "has exercised coercive power or has provided such significant encouragement, either overt or

---

[2] Chatman argued this below. He quoted *Miranda v. Arizona* (1966) 384 U.S. 436 to the effect that "[w]here rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." (*Id*. at p. 491.) But the trial court seemed to miss the point. It responded, "[I]t appears that you are mischaracterizing certain case law, for example, the Miranda case, which has nothing to do with what we have here before us in this case." "[Y]ou are throwing in civil and criminal."

6

covert, that the choice must in law be deemed to be that of the State. [Citations.]" (*Blum v. Yaretsky* (1982) 457 U.S. 991, 1004; see, e.g., *Adickes v. S.H. Kress & Co.* (1970) 398 U.S. 144, 171 [private party could be liable for unconstitutional racial discrimination where it acted pursuant to state-enforced statute or custom].) Thus, "where a state statute encourages or coerces a private party to act in a manner that deprives the plaintiff of a constitutional right . . . state action occurs." (*McKinney v. West End Voluntary Ambulance Assn.* (E.D. Pa. 1992) 821 F.Supp. 1013, 1020; see, e.g., *Duncan v. Peck* (6th Cir. 1985) 752 F.2d 1135, 1141 [private parties who obtained default judgment and execution pursuant to state service-by-publication law, later found to violate due process, were state actors].) By contrast, a private party who merely takes advantage of a permissive procedure provided by a state statute does not, for that reason, become a state actor. (*Estades-Negroni v. CPC Hosp. San Juan Capestrano* (1st Cir. 2005) 412 F.3d 1, 6.)

Likewise, assuming that Arrowhead's actions violate section 407(a), no state statue can validate them. "' . . . A construction of [a] federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced. [Citation.] . . .' [Citation.]" (*Martinez v. California* (1980) 444 U.S. 277, 284, fn. 8.)

Arrowhead argues that, under *Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1481-1485, a taxpayer cannot claim exemptions, such as would be available to a

judgment debtor, in response to a withholding order. However, section 407(a) is not a state-law "exemption." Rather, it is an overriding provision of federal law. (*Bennett v. Arkansas* (1988) 485 U.S. 395, 397-398 [state law authorizing seizure of prisoner's social security benefits to pay for prisons violated section 407(a) and supremacy clause].) The only disputable issue is whether a withholding order constitutes "legal process" within the meaning of section 407(a). (See generally *Washington State Dept. of Social & Health Services v. Guardianship Estate of Keffeler* (2003) 537 U.S. 371, 384-385.) Arrowhead did not demur on this ground and raises no such argument on appeal.

There may be some question as to whether Chatman can sue Arrowhead *alone*, without joining the Board. (See Code Civ. Proc., § 389.) There may even be some question as to whether the facts alleged by Chatman actually amount to a violation of due process or of section 407(a). Again, however, Arrowhead did not demur on any of these grounds and has not raised them on appeal.

In sum, then, we need not hold, and we do not hold, that Chatman's complaint is unassailable. However, the particular state law grounds on which Arrowhead demurred, and on which the trial court sustained the demurrer, simply do not wash.

III

ALLEGATIONS REGARDING IMPROPER DEBT COLLECTION METHODS

Arrowhead also demurred to Chatman's allegations concerning the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) on the ground that a consumer debt was not involved. It reiterates this argument on appeal.

8

The complaint alleged as part of a single cause of action that Arrowhead's debt collection methods violated not only the state Rosenthal Act, but also the federal Fair Debt Collection Practices Act. "A general demurrer does not lie to only part of a cause of action." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 7:42.2.)

Arguably, if these allegations actually constituted two separate causes of action, we could disregard the fact that Chatman combined them into one. (See *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854-1855.) However, they did not. They alleged the violation of a single primary right — to be free from unfair debt collection methods — regardless of the fact that they invoked both state and federal statutory law. (Cf. *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 432 [a cause of action for alleged discrimination is based on a single primary right, whether the cause of action relies on federal or state anti-discrimination law].) Arrowhead's remedy would have been a motion to strike (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 7:42.4), but Arrowhead did not file one.

Accordingly, we need not decide whether Chatman adequately alleged a violation of the Rosenthal Act.

9

## IV

## DISPOSITION

The judgment is reversed.  Chatman is awarded costs on appeal against

Arrowhead.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                              P. J.


We concur:

McKINSTER
                    J.

MILLER
                    J.

10