**In re Carolyn Aline Kerscher HALL, Debtor.**

**Kenneth FERGUSON, Plaintiff,**

**v.**

**Carolyn Aline Kerscher HALL, Defendant.**

**Bankruptcy No. 1–88–02777.
Adv. No. 1–88A–0271.**

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 7, 1989.

W. Michael Corley, Smithville, Tenn., for plaintiff.

Robert S. Peters of Swafford, Peters, and O'Neal, Winchester, Tenn., for defendant.

MEMORANDUM

RALPH H. KELLEY, Chief Judge.

Before the debtor filed her bankruptcy case, the plaintiff obtained a state court judgment against her. Since the debtor did not appear for the hearing on a motion for default, the state court entered the judgment against her by default after hearing evidence from the plaintiff. The judgment recites that it is based on the debtor's embezzlement of funds from the plaintiff

and includes punitive damages imposed because of the embezzlement.

In the debtor's bankruptcy case, the plaintiff brought this suit to determine whether the judgment debt can be discharged. The complaint relies on Bankruptcy Code § 523(a)(4), which makes a debt for embezzlement not dischargeable in bankruptcy. The complaint also relies on subsection (a)(2) and (a)(6) of Bankruptcy Code § 523. 11 U.S.C.A. § 523. The federal courts have exclusive jurisdiction to determine the dischargeability of debts under these subsections of § 523(a). 11 U.S. C.A. § 523(c).

The plaintiff has filed a motion for summary judgment on the ground that the state court judgment, since it states that it is a judgment for embezzlement, precludes the debtor from proving in this court that she did not commit embezzlement. The question is whether the state court default judgment precludes a trial in this court on the question of whether the debtor embezzled any money from the plaintiff.

*Discussion*

The same set of facts can give rise to a suit in one court and then a second suit in another court based on different legal theories. The binding or "preclusive" effect of the first court's judgment in the second suit in a different court is usually broken down into two categories—claim preclusion, also known as res judicata, and issue preclusion, also known as collateral estoppel.

Res judicata bars a party to the first lawsuit from litigating in the second suit all claims that could have been tried and decided in the first suit, without regard to whether they were in fact tried and decided. Collateral estoppel, or issue preclusion, only bars relitigation of particular issues that were in fact tried and decided in the first lawsuit. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

The court of appeals for this circuit has held that collateral estoppel applies. A prior state court decision may be binding on the same parties in a dischargeability suit as to specific issues decided in the state court. *Spilman v. Harley,* 656 F.2d 224, Bankr.L.Rep. (CCH) ¶ 68,272 (6th Cir.1981).

The court of appeals in *Spilman v. Harley* said that a prior state court judgment will preclude a trial in the bankruptcy court only as to issues necessarily decided in the state court and only if they were decided after a trial in which the debtor took part. Under this rule, a state court default judgment is not binding on either party as to any issues. *Spilman v. Harley,* 656 F.2d 224, 228, Bankr.L.Rep. (CCH) ¶ 68,272 (6th Cir.1981).

If the court follows this part of *Spilman v. Harley,* then the plaintiff's default judgment does not entitle him to a summary judgment holding the debt to be a nondischargeable debt for embezzlement.

To get around this rule, the plaintiff relies on *In re Byard,* 47 B.R. 700, 12 Bankr. Ct.Dec. 1069, 12 Coll.Bankr.Cas.2d 387, Bankr.L.Rep. (CCH) ¶ 70,341 (Bankr.M.D. Tenn.1985). *Byard* held that later decisions by the United States Supreme Court had overruled *Spilman v. Harley.*

■ The later Supreme Court decisions did not involve dischargeability questions, but they established general rules for the federal courts to determine the res judicata or collateral estoppel effect of a prior state court judgment. First, there is the general rule that state law determines the collateral estoppel effect of a state court judgment in a later federal lawsuit. Second, even if the federal lawsuit is exclusively within the jurisdiction of the federal courts and could not have been tried in the earlier state court suit, the federal court still looks to state law first to determine the res judicata or the collateral estoppel effect of the earlier state court decision. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274; *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v.*

*McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ If state law answers the question against the person who is arguing for res judicata or collateral estoppel, then there is no need to go any farther. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 382 note 3, 105 S.Ct. 1327, 1333 note 3, 84 L.Ed.2d 274, note 3 (1985); *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 88, 104 S.Ct. 892, 899–900, 79 L.Ed.2d 56 (1984) (JJ. White & Powell concurring). However, if state law would give the state court judgment the res judicata or collateral estoppel effect that one of the parties is arguing for, then there is a third question. Is there some federal policy that demands a federal rule different from the state law rule of res judicata or collateral estoppel?

The bankruptcy court in *Byard* followed this procedure. It looked to Kansas law first. Under Kansas law, the default judgment by the Kansas state court holding the debtor liable for fraud, conversion, and embezzlement would have been binding on the debtor on those issues in any later suit between the debtor and the creditor. If Kansas law had not bound the debtor on those issues, then the bankruptcy court could have stopped at this point, rather than deciding if there should be a federal rule that made the default judgment binding. But since Kansas law made the default judgment binding, the bankruptcy court went to step number 3.

Should there be an exception to the general rule that state law controls? The bankruptcy court did not find any compelling statement of federal bankruptcy law which justified a departure from the general rule, that state law determines the collateral estoppel effect of a state court judgment. Therefore, the bankruptcy court held that the default judgment was binding on the debtor.

In an earlier Supreme Court case involving dischargeability, the debtor had argued that res judicata prevented the creditor from offering any new evidence in the bankruptcy court on the issue of fraud as a ground for nondischargeability. The Su-

preme Court held that res judicata did not prevent the creditor from proving fraud. This was established as a rule of federal law without any mention of a general rule that the bankruptcy court should have looked first to state law to determine the res judicata effect of the state court judgment. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 5 Bankr.Ct.Dec. 226, 1 Coll.Bankr.Cas.2d 34, Bankr.L.Rep. (CCH) ¶ 67,122 (1979).

As to *Brown v. Felsen,* the bankruptcy court in *Byard* distinguished it on the ground that it created a federal rule to determine the claim preclusive or res judicata effect of a prior state court judgment, but it did not create a federal rule as to the issue preclusive or collateral estoppel effect of a prior state court judgment.

As to *Spilman v. Harley,* the bankruptcy court in *Byard* took the view that, if the court of appeals were faced with the problem again, it would follow the later Supreme Court cases to the conclusion that state law controlled and gave collateral estoppel effect to the default judgment. However, after *Byard* was decided, the court of appeals applied the federal rules of collateral estoppel that it set out in *Spilman v. Harley.* The court of appeals did not look to state law to determine the collateral estoppel effect of an earlier state court judgment. *Wheeler v. Laudani,* 783 F.2d 610, 14 Bankr.Ct.Dec. 239, 14 Coll. Bankr.Cas.2d 1057, Bankr.L.Rep. (CCH) ¶ 70,997 (6th Cir.1986). The court of appeals did not discuss the issue in detail and did not mention *Byard,* but its decision could be taken as disapproval of the result in *Byard* and reaffirmation of the federal rules of collateral estoppel that were set out in *Spilman v. Harley.*

■ In any event, this court disagrees with the decision in *Byard* that there is no federal justification for an exception to the rule that state law determines the preclusive effect of a state court judgment.

The Supreme Court gave the following standard for deciding when there should be an exception to the general rule that state law controls:

Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. Our previous decisions indicate that the primary consideration must be the intent of Congress.

*Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 386, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985).

The Supreme Court cited *Brown v. Felsen* as correctly decided under this standard.

In *Brown v. Felsen,* the Supreme Court said that the res judicata rule proposed by the debtor would require any creditor who brought a collection suit in state court to try dischargeability issues to the hilt in the state court to protect himself from the "mere possibility that the debtor might take bankruptcy in the future." *Brown v. Felsen,* 442 U.S. 127, 135, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767, 5 Bankr.Ct.Dec. 226, 1 Coll.Bankr.Cas.2d 34, Bankr.L.Rep. (CCH) ¶ 67,122 (1979).

Furthermore, Congress gave the bankruptcy courts exclusive jurisdiction to determine the dischargeability of some debts because creditors had been able to avoid the effect of bankruptcy discharges by obtaining state court judgments, including default judgments, after bankruptcy, when the debtor could not afford an attorney or did not realize the need to defend or defaulted for other reasons. The Supreme Court concluded that the res judicata rule proposed by the debtor in *Brown v. Felsen* violated the policy behind the exclusive jurisdiction of the bankruptcy courts, even though the judgment in *Brown v. Felsen* was a prebankruptcy judgment instead of a postbankruptcy judgment:

> While Congress did not expressly confront the problem caused by prebankruptcy state court adjudications, it would be inconsistent with the philosophy of [the grant of exclusive jurisdiction to the bankruptcy courts] to adopt a policy of res judicata which takes the [dischargeability] question away from the bankruptcy courts and forces them back into state courts.

442 U.S. 127, 136, 99 S.Ct. 2205, 2212.

This reasoning applies in this case. According to the plaintiff's argument, an individual who is sued in state court must defend to the hilt in the state court in order to preserve the dischargeability of the debt even though no bankruptcy case is pending and there may never be a bankruptcy case. Otherwise, the creditor can make the debt nondischargeable simply by obtaining a default judgment which recites that it is based on fraud, false pretenses, embezzlement, larceny, or some other ground of nondischargeability. An individual could not forego defending a state court lawsuit and still have the right to a determination of the dischargeability by the appropriate court if or when he files bankruptcy.

It is not just the exclusive jurisdiction of the bankruptcy courts over some dischargeability issues but also the problem of premature litigation of dischargeability issues that requires the court to deny collateral estoppel effect to a prebankruptcy default judgment. In most of the later Supreme Court cases that formed the basis of the decision in *Byard,* the plaintiff's state and federal claims were all accrued before the plaintiff began litigation in the state court. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). However, in *Brown v. Felsen* and in this case, neither the debtor nor the creditor had any dischargeability claims at the time of the state litigation. This difference is obviously more important to res judicata problems: how can a state court judgment be res judicata as to federal dischargeability claims that did not exist when the state court litigation took place? Nevertheless, the prematurity of dischargeability issues in state court litigation is clearly a problem with giving collateral estoppel effect to a state court *default* judgment. Consider the facts in this case.

The state court default judgment was entered during the debtor's earlier chapter 13 case. In the earlier chapter 13 case, the debtor filed a complaint for a turnover against the plaintiff. The plaintiff filed a counterclaim alleging that the debtor had embezzled money from the plaintiff. The debtor nonsuited her complaint for a turnover. The attorneys then agreed to try the embezzlement case in state court while the chapter 13 was pending. The plaintiff filed a motion for default, and the debtor failed to appear for the hearing on the motion. The state court heard testimony from the plaintiff and entered the default judgment finding that the debtor had willfully embezzled money from the plaintiff.

These facts do not show a bad example of the debtor imposing on the creditor by choosing to default in state court in favor of trying the question of dischargeability in the bankruptcy court. The letters between the attorneys in the earlier chapter 13 case reveal that the debtor's attorney viewed the dischargeability of the alleged debt as irrelevant at that time and treated the state court suit as nothing more than a suit to establish the existence of a debt whose dischargeability could be determined later. This is doubtlessly why the debtor chose to default. Despite the pending chapter 13 case, the question of dischargeability was hypothetical just as it would have been if there had been no·chapter 13 case.

This fact distinguishes this case from *Pacific Energy & Minerals v. Hunting,* 93 B.R. 723 (Bankr.D.Colo.1988) (J. Brooks). In that case the court gave collateral estoppel effect to a state court default judgment entered during a chapter 11 case in which the bankruptcy court had specifically allowed the state court lawsuit to continue. Furthermore, the debtor in that case had in effect given the creditor the runaround before finally defaulting. The bankruptcy court may have been justified in treating the state court default judgment as its own.

The plaintiff in effect argues that the debtor had a choice of defending in the state court or allowing him to win the dischargeability issue in advance by obtaining a recital in the default judgment that it was based on embezzlement. The court disagrees. The only problem the court sees with denying collateral estoppel effect to a default judgment is the problem of consistency. The bankruptcy court in *Byard* raised the question: if the federal policy is that dischargeability issues should *not* be decided in state court before bankruptcy, then neither a default judgment nor a judgment entered after a trial in which the debtor took part should have any collateral estoppel effect in a later dischargeability suit.

The federal policy, however, is not strictly a policy against dischargeability issues being decided in prebankruptcy proceedings. The policy is that neither a creditor nor a debtor should be required to have dischargeability issues tried in a prebankruptcy lawsuit. In *Brown v. Felsen,* the debtor's argument for res judicata, if accepted, would have forced creditors to try issues in state court before bankruptcy specifically for the purpose of determining dischargeability in advance of bankruptcy. The problem in this case with giving collateral estoppel effect to a prebankruptcy default judgment is not as clear, but it does exist. If the defendant in a state court case goes to trial, he may have dischargeability questions in mind, but his main purpose must be to defeat the plaintiff's claim on the merits, that is, to prove that the plaintiff does not have an enforceable claim. Collateral estoppel in a later dischargeability suit is a known risk, but proving or disproving dischargeability or preserving the question of dischargeability is not the main purpose of the state court lawsuit. The problem with giving collateral estoppel effect to a default judgment is that it has the effect of forcing a defendant to litigate in the state court not to disprove the plaintiff's claim on the merits but specifically to preserve the question of dischargeability in bankruptcy.

The problem is equivalent to the problem in *Brown v. Felsen.* The creditor, rather than the debtor, is arguing for giving effect to prebankruptcy judgments in such a way that debtors are *required* to litigate before bankruptcy in order to preserve the

question of dischargeability of the alleged debt. Requiring either the debtor or the creditor to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt is contrary to the policy of the bankruptcy laws as pointed out in *Brown v. Felsen.*

The court concludes that the court of appeals, despite the later Supreme Court decisions, would still apply the rule of *Spilman v. Harley* that a prebankruptcy default judgment has no collateral estoppel effect in a dischargeability suit.

The plaintiff's default judgment in state court is not binding on the debtor in this suit to determine dischargeability under Bankruptcy Code § 523(a)(2), (4), or (6).

The court will enter an order accordingly.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.