In re Jack Wayne BURSACK, Debtor.

RALLY HILL PRODUCTIONS, INC., a Tennessee Corporation, Plaintiff,

v.

Jack Wayne BURSACK, Defendant.

Bankruptcy No. 393–04249–KL3–7.
Adv. No. 393–0359A.

United States Bankruptcy Court,
M.D. Tennessee.

Jan. 31, 1994.

David E. Lemke, Thomas H. Peebles, IV, Nashville, TN, for plaintiff.

Henry Clay Barry, Lebanon, TN, for debtor/defendant.

## MEMORANDUM

ALETA A. TRAUGER, Bankruptcy Judge.

The question raised by the plaintiff's motion for summary judgment is whether a previous state court fraud judgment should be given collateral estoppel effect in this dischargeability action under 11 U.S.C. § 523(a)(2). The court concludes that the judgment should be given collateral estoppel effect.

## FACTS

On January 30, 1992, the plaintiff herein, Rally Hill Productions, Inc. ("Rally Hill"), filed an action against Jack Wayne Bursack (the "debtor"), Lynwood Eaton, and American Indian Broadcasting Group ("AIBG"), in the Circuit Court for Maury County, Tennessee, asserting claims arising out of certain loan transactions. The complaint alleged, among other things, that Eaton and the debtor made false representations and submitted false financial statements at various stages of the transaction, upon which Rally Hill reasonably relied in extending credit to AIBG. Debtor and AIBG answered and asserted cross claims against Paul Smith (a director and secretary of Rally Hill) and against Eaton and his wife, Bertha A. Eaton. The debtor was deposed on June 11, 1992, and again on July 15, 1992. On both occasions he was represented by counsel.

The case was set for trial on February 3, 1993. One or two days before the trial, the debtor's attorney advised Rally Hill's attorneys that the debtor would not be present at the trial. The trial commenced on February 3, and the court heard evidence presented by Rally Hill and defendant Eaton, including portions of the debtor's deposition testimony. The court granted judgment in favor of Rally Hill against all three defendants, jointly and severally, in the amount of $470,098.25 on the underlying loan. The fraud claim was submitted to the jury, and the jury returned fraud verdicts against both Eaton and the debtor. After a separate hearing on punitive damages, the jury assessed punitive damages against Eaton and the debtor in the amount of $100,000.00 each.

The debtor filed a petition under Chapter 7 of the Bankruptcy Code on May 28, 1993. Rally Hill instituted this action to determine the dischargeability of its debt on August 30, 1993, and filed the transcript of the state court trial as an exhibit to its motion for summary judgment.

## DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, summary judgment "shall be rendered forth-

with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

For purposes of this motion, the sole issue is whether the state court fraud judgment against the debtor is entitled to collateral estoppel effect. The material facts, therefore, are those relating to the entry of the judgment rather than the facts of the underlying fraud claim. Those facts—the trial, the debtor's absence from the trial, the debtor's participation in the case prior to trial, and the entry of judgment against the debtor—are not in dispute. Thus, there is no genuine issue as to any material fact.

■ The principles of collateral estoppel apply in dischargeability actions under § 523(a) of the Code. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755, 763 n. 11 (1991); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981). Under the standards of full faith and credit enunciated in 28 U.S.C. § 1738,[1] "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56, 63 (1984). As the Court noted in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982):

> It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.

*Kremer*, 456 U.S. at 481, 102 S.Ct. at 1896, 72 L.Ed.2d at 280 (citations omitted). The fact that bankruptcy courts have exclusive jurisdiction over dischargeability actions does not alter these principles. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470

U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274, 281 (1985). *See also Spilman*, 656 F.2d at 227 ("that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts").

If the state in which the judgment was rendered would give preclusive effect to the judgment, then the court must next determine whether federal statutes provide any express or implied exception to the application of § 1738. *Marrese*, 470 U.S. at 381, 105 S.Ct. at 1332, 84 L.Ed.2d at 282. In *In re Byard*, 47 B.R. 700 (Bankr.M.D.Tenn.1985), Judge Lundin of this district applied the standards discussed in the *Migra, Kremer*, and *Marrese* cases to a state court default judgment. The court first determined that the state of origin, Kansas, would give preclusive effect to the default judgment. *Id.* at 706. The court then concluded that "[t]here is no compelling statement of federal bankruptcy law which expressly or impliedly excepts to the normal operation of § 1738 where the state court judgment for which issue preclusive effect is sought is a default judgment." *Id.* at 707.

■ In this case, the judgment was rendered by a Tennessee court. Tennessee collateral estoppel principles preclude relitigation of issues in a second suit between the same parties, even if the latter suit is based on a different cause of action, so long as the issues raised in the second suit were actually litigated and decided in the former suit and were necessary to the judgment in that suit. *Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987); *Shelley v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709, 714 (1966); *Kemp v. Kemp*, 723 S.W.2d 138 (Tenn.Ct.App.1986); *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn.Ct.App. 1977).

■ There is no dispute that this action involves the same parties as the state court action. It is likewise clear that the same

---

1. That statute provides that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738 (1988).

issues are involved in both cases.[2] In order to find a debt nondischargeable under § 523(a)(2)(A), the plaintiff must prove the following five elements:

(1) that the debtor made materially false representations;

(2) that the debtor knew the representations were false at the time he made them;

(3) that the debtor made the false representations with the intention and purpose of deceiving the creditor;

(4) that the creditor reasonably relied upon the debtor's materially false representations; and

(5) that the creditor sustained loss and damages as a proximate result of the materially false representation made by the debtor.

*Mack v. Dixie–Shamrock Oil & Gas, Inc. (In re Dixie–Shamrock Oil & Gas, Inc.)*, 53 B.R. 262, 266 (Bankr.M.D.Tenn.1985) (quoting *Heinold Commodities and Securities, Inc. v. Hunt (In re Hunt)*, 30 B.R. 425, 435 (M.D.Tenn.1983). *See Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986) (sufficient to show that misrepresentations were made by debtor with gross recklessness as to their truth, rather than actual knowledge of falsity).

■ To establish the nondischargeability of a debt for money, property, or the extension, renewal or refinancing of credit under § 523(a)(2)(B), the plaintiff must prove that the debt was obtained by use of a statement in writing that:

(1) was materially false;

(2) respecting the debtor's or an insider's financial condition;

(3) on which the plaintiff reasonably relied; and

(4) that the debtor caused to be made or published with the intent to deceive.

11 U.S.C. § 523(a)(2)(B). The standard of proof for dischargeability exceptions is the ordinary preponderance of the evidence standard. *Grogan*, 498 U.S. at 290, 111 S.Ct. at 661, 112 L.Ed.2d at 767.

■ Under Tennessee law, a plaintiff in a fraud action must prove:

(1) the defendant made a representation of existing or past fact;

(2) the representation was false;

(3) the representation was in regard to a material fact;

(4) the representation was made knowingly, or without belief in its truth, or recklessly;

(5) plaintiff reasonably relied on the representation; and

(6) the plaintiff suffered damage as a result.

*Edwards v. Travelers Insurance*, 563 F.2d 105, 110–113 (6th Cir.1977). Thus, the elements necessary to prove state fraud are virtually identical to those required for a fraud finding under § 523(a)(2).

The judge in the state court action at issue here specifically instructed the jury with regard to fraud as follows:

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or obtain an undue advantage over him, there is a positive fraud. The representation must be made with the knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which was material, and the plaintiff must have reasonably relied upon that representation to his injury.

(Trial Transcript, Volume II, page 76).

The jury was also instructed that punitive damages could only be awarded if the defendant had acted intentionally, fraudulently, maliciously, or recklessly. The court defined those terms as follows:

A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result.

**2.** The court recognizes that dischargeability is exclusively a matter of federal bankruptcy law and thus can never be precisely at issue in a state court lawsuit. However, to the extent that the elements of the state law claim are identical to those required for § 523, the court "can and must give collateral estoppel effect" to state court determinations of those elements. *In re Greene*, 150 B.R. 282, 285 (Bankr.S.D.Fla.1993) (citing *Grogan*, 498 U.S. at 284, 111 S.Ct. at 658, 112 L.Ed.2d at 763).

A person acts fraudulently when the person intentionally would misrepresent an existing material fact or produces a false impression in order to mislead another or to obtain an undue advantage and another is injured because of reasonable reliance upon that misrepresentation. A person acts maliciously when the person is motivated by ill will, hatred or personal spite. A person acts recklessly when the person is aware of but consciously disregards a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under the circumstances.

(Trial Transcript, Vol. II, pp. 77–78.)

These jury instructions, together with the rest of the state court record in this case, clearly indicate that each of the elements necessary to prove fraud for purposes of nondischargeability under § 523(a)(2) was pleaded, argued, and considered by the jury in the state court action. Thus, the fraud issues are the same in the two proceedings and were "necessarily decided" by the jury in reaching its verdict against the debtor.

■ The major area of dispute, therefore, is the requirement that the issues be "actually litigated" in the state court action. The debtor asserts that because he did not appear at the trial, the judgment was a default judgment and the issues were not "actually litigated." [3] As the *Byard* court noted, however, the "actually litigated" requirement

does not refer to the quality or quantity of argument or evidence addressed to an issue. It requires only two things: first, that the issue has been effectively raised in a prior action, either in the pleadings or through development of the evidence in argument at trial or on motion; and second, that the losing party has had "a fair opportunity procedurally, substantively, and evidentially" to contest the issue. The general rule therefore is that subject to these restrictions default judgments do constitute res judicata for purposes of both

claim preclusion and issue preclusion (collateral estoppel).

*Byard,* 47 B.R. at 706–07 n. 9 (quoting *Overseas Motors Inc. v. Import Motors Limited Inc.,.* 375 F.Supp. 499, 516, *aff'd* 519 F.2d 119 (6th Cir.1975)).

Two of the judges on the United States District Court for the Middle District of Tennessee have ruled in consonance with *Byard.* In a very recent decision, Judge Wiseman, in affirming the bankruptcy court, specifically enunciated his agreement with the reasoning in *Byard* in upholding the collateral estoppel effect of a default judgment. *White v. Rogers (In re Rogers),* No. 3:93–0678, 1993 WL 610730, slip op. at 2 (M.D.Tenn., Dec. 10, 1993). And in *In re Seals,* 110 B.R. 331 (M.D.Tenn.1989), Judge Morton, without mentioning *Byard,* held that the issue of assault and battery was "actually litigated" where the defendant, who did not appear and allowed a default judgment to be entered against him, "had an opportunity to defend" and the court heard evidence from the plaintiff at trial. *Id.* at 333. The court stated:

This Court does not believe that where a party is notified by pleadings of the allegations of assault and battery, and that the plaintiff is seeking both compensatory and punitive damages, coupled with the allegation that the acts were wilful, wanton, and in conscious disregard of the plaintiff's rights, that he may come in and assert that the matter was actually not litigated.

*Id.*

In *In re Greene,* 150 B.R. 282 (Bankr. S.D.Fla.1993), the court held that the issue of fraud had been "actually litigated" under Florida law when the defendant had answered and counter-claimed and appeared at a calendar call but chose not to appear at trial. *Id.* at 287. The court noted that, despite the defendant's absence, the plaintiff had to put on evidence to convince the jury that the elements of fraud were met, and a separate trial was held on the issue of damages. *Id.* Such a situation, the court concluded, "is far from being classified as a pure default" and was "more than sufficient" to

---

**3.** Plaintiff contends that the judgment was actually a directed verdict rather than a default judgment. This court does not reach that question, since it concludes that the collateral estoppel effect of the judgment is the same.

meet Florida's "actually litigated" requirement. *Id.*

The facts of this case are similar to those in *Greene.* Here, the debtor answered and asserted cross claims, appeared twice at depositions, and participated in other pretrial matters. Although the debtor chose at the last minute not to appear at trial, the plaintiff still had to put on its evidence against the debtor to convince the jury that the debtor had committed fraud and should be liable for punitive damages. Under these circumstances, the court concludes that the necessary issues were "actually litigated."

■ Further, even if the default judgment had been rendered without all of the pretrial participation of the debtor and the return of verdicts against him by a jury which heard proof, Tennessee law would give it preclusive effect:

> A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised, and material to the case made by declaration or other pleadings, and such issues cannot be relitigated in any subsequent action between the parties or their privies.

*Lawhorn v. Wellford,* 179 Tenn. 625, 168 S.W.2d 790, 792 (1943); *Taylor v. Sledge,* 110 Tenn. 263, 75 S.W. 1074, 1075 (1903). *See Beare v. Burnett,* 162 Tenn. 610, 39 S.W.2d 737, 737 (1931). "The rule is that the defendant, by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in his complaint, except the amount of the plaintiff's unliquidated damages." *Patterson v. Rockwell International,* 665 S.W.2d 96, 101 (Tenn.1984) (citing *Adkisson v. Hoffman,* 225 Tenn. 362, 469 S.W.2d 368 (1972); *Warren v. Kennedy,* 48 Tenn. 437 (1970)).

■ Having determined that state law would give preclusive effect to the judgment at issue, this court must next determine whether there is an exception to the application of § 1738 in this case. The debtor urges this court to adopt the reasoning of *In re Hall,* 95 B.R. 553 (Bankr.E.D.Tenn.1989), in which the court acknowledged the analysis of the *Migra, Kremer,* and *Marrese* cases but

disagreed with *Byard*'s conclusion that there was no federal policy creating an exception to the general rule that state law determines the preclusive effect of state court judgments. *Id.* at 555. The *Hall* court concluded that there was a federal policy that "neither a creditor nor a debtor should be required to have dischargeability issues tried in a prebankruptcy lawsuit." *Id.* at 557. To give preclusive effect to a default judgment, the court noted, "forc[es] the defendant to litigate in the state court not to disprove the plaintiff's claim on the merits but specifically to preserve the questions of dischargeability in bankruptcy." *Id.*

The *Hall* court's conclusion was based primarily on its reading of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In that case, the Supreme Court held that res judicata did not apply to a creditor's state court consent judgment so as to prevent the creditor from proving fraud in a subsequent dischargeability action. The Court noted that application of res judicata in that situation "would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possibility that the debtor might take bankruptcy in the future." 442 U.S. at 135, 99 S.Ct. at 2211, 60 L.Ed.2d at 774.

The *Hall* court's reliance on this statement to support a general rule against giving any preclusive effect to state court judgments is misplaced. As the *Brown* Court noted:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. If in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [the predecessor of § 523], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

442 U.S. at 139, 99 S.Ct. at 2213, 60 L.Ed.2d at 776 n. 10 (citations omitted).

**308**

Further, as the Sixth Circuit subsequently noted, the *Brown* Court's concern about premature litigation of dischargeability issues was addressed to the situation in which the facts necessary for a determination of non-dischargeability were not necessary to the state court's determination. *Spilman v. Harley*, 656 F.2d at 224, 227–28 (6th Cir. 1981). When, however,

> the factual issues necessary for dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings. Collateral estoppel is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time. There is no reason to suppose that parties will not vigorously present their case on issues necessary to the state court proceeding or that the bankruptcy court will be any more fair or accurate than the state court in a determination of the facts.

*Id.* at 228.[4]

The *Hall* court, however, relied on *Spilman* to further support a federal exception to the application of state law collateral estoppel principles. In *Spilman*, the Sixth Circuit did not apply state law collateral estoppel principles but, instead, applied a standard derived from other federal cases. 656 F.2d at 228. As part of that standard, the court stated that "[i]f the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in a bankruptcy court." *Id.*[5]

As the *Byard* court noted, however, *Spilman* was decided prior to the developments in full faith and credit law in *Kremer, Migra,* and *Marrese. Byard*, 47 B.R. at 704–05. In

the *Byard* court's opinion, the Sixth Circuit would approach the issue differently in a case decided after all of these developments. *Id.* In fact, in *Duncan v. Peck*, 752 F.2d 1135 (6th Cir.1985), decided between *Migra* and *Marrese*, the Sixth Circuit specifically noted that under *Migra*, it must first look to state law to determine the preclusive effect of a prior state court judgment. *Duncan*, 752 F.2d at 1139.

The *Hall* court did not cite *Duncan*. Instead, it argued that there was continued viability of a separate federal collateral estoppel standard in *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986). The *Wheeler* court held that because the jury verdict in the state court case did not reflect whether the issue of willfulness and maliciousness was actually litigated and necessary to the verdict, collateral estoppel would not bar relitigation of that issue in an action under § 523(a)(6) of the Bankruptcy Code. *Id.* at 615. Because *Wheeler* did not expressly apply state law collateral estoppel principles, the *Hall* court concluded that "its decision could be taken as disapproval of the result in *Byard* and reaffirmation of the federal rules of collateral estoppel that were set out in *Spilman v. Harley*." *Hall*, 95 B.R. at 555.

This court finds this conclusion to be a strained reading of *Wheeler* for two reasons. First, Chief Judge Merritt, the author of the *Duncan* opinion which expressly adopted *Migra*, was part of the panel that decided *Wheeler*, and it is unlikely that the *Wheeler* court would have made such a dramatic departure from *Duncan* without at least some discussion of the issue. Second, the real issue in *Wheeler* was not which collateral estoppel standard applies (federal or state), but whether there was a genuine issue of material fact for summary judgment purposes. Because the state court record was unclear as to the basis for the jury's verdict,

---

4. *Spilman* involved facts similar to *Brown* in that the debtor, rather than the creditor, sought to use collateral estoppel to preclude relitigation of the issue of willfulness or maliciousness in a dischargeability action under § 523(a)(6) of the Code. The Sixth Circuit held that it could not determine from the state court's judgment whether the issue of willfulness or maliciousness was actually litigated and necessary to that court's judgment. 656 F.2d at 228–29. The

Sixth Circuit therefore remanded the case to the bankruptcy court for a review of the entire state court record. *Id.* at 229.

5. Because *Spilman* did not involve a default judgment, its reference to default judgments not meeting the "actually litigated" standard is arguably dictum.

the court concluded that there was a genuine issue of material fact precluding summary judgment. *Wheeler,* 783 F.2d at 615. The *Wheeler* court thus did not need to reach the collateral estoppel issue to decide the case, and consequently its brief mention of the actually litigated requirement from *Spilman* hardly constitutes a rejection of the *Migra* standard applied in *Byard.*

Further, even if this court were to apply the federal standard enunciated in *Spilman,* the primary holding of that case actually supports the plaintiff's position. The *Spilman* court refused to apply collateral estoppel to the state court judgment because it determined that the portions of the state court record considered by the bankruptcy court were insufficient to determine whether the issue of willfulness and maliciousness required by § 523(a)(6) was actually litigated and necessary to the judgment in that case. *Spilman,* 656 F.2d at 228–29. The case was remanded with directions to the bankruptcy court to review the entire state court record in order to make that determination. *Id.* at 229. In contrast, this court has before it sufficient portions of the state court record to determine that the facts necessary to a dischargeability finding were raised, argued, and necessary to the jury's determinations of fraud and punitive damages in the state court action.

For all of these reasons, this court does not find the reasoning of the *Hall* case persuasive.[6] Instead, this court adopts the reasoning of the *Byard* opinion and concludes that there is no federal policy creating an exception to the normal rules of full faith and credit in this case. Because a Tennessee court would give preclusive effect to the judgment in this case, this court must do likewise. Therefore, plaintiff's motion for summary judgment will be granted, and the indebtedness of debtor to plaintiff resulting from the state court judgment will be declared nondischargeable. An appropriate order will be entered.

---

6. Other Tennessee bankruptcy courts have adopted the reasoning of *Hall* to deny collateral estoppel effect to state court default judgments. In *In re Morrison,* 119 B.R. 135 (Bankr. E.D.Tenn.1990), the court agreed with *Hall*'s conclusion that *Wheeler* evidenced the Sixth Circuit's continuing use of a federal collateral estoppel standard, notwithstanding the Supreme Court's pronouncements on full faith and credit. *Id.* at 141. The *Morrison* court also noted that the state court judgment on liability contained no findings and there was no trial transcript for the bankruptcy court to review to determine whether the necessary issues were actually litigated and necessary to the state court's determination. *Id.* at 141–42.

Similarly, in *In re Stiles,* 118 B.R. 81 (Bankr. W.D.Tenn.1990), there was no trial transcript on the issue of liability, although the debtor did appear and participate in a separate trial on the issue of damages. *Id.* at 86. The court acknowledged that Tennessee law would give collateral estoppel effect to the default judgment on liability, but agreed with *Hall* that an exception to the application of full faith and credit was justified in this case. *Id.* at 85–86.

To the extent these cases rely on *Hall,* the court finds them unpersuasive. Further, these cases are distinguishable on their facts in that the court in this case has the benefit of a *trial transcript* which reflects specific factual findings on the necessary issues.