In re Dennis Amiel CALVERT, Debtor.

BAY AREA FACTORS, a DIVISION OF DIMMITT & OWENS FINANCIAL, INC., Plaintiff,

v.

Dennis Amiel CALVERT, Defendant.

Bankruptcy No. 92–28969–K.
Adv. No. 94–0592.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Feb. 15, 1995.

---

**14.** *See supra* notes 2 and 4.

M. Hollis Williams and Darrell L. Castle, Memphis, TN, for debtor.

David M. Rudolph, Memphis, TN, for plaintiff-creditor.

Jimmy L. Croom, Staff Atty., U.S. Trustee's Office, Memphis, TN, for U.S. trustee for Region 8.

## MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ARISING OUT OF ITS COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

In this adversary proceeding the instant matter before the court arises out of a motion for summary judgment, pursuant to FED. R.BANKR.P. 7056, filed by the plaintiff, Bay Area Factors ("BAF"), in its pending complaint against the defendant, Dennis Amiel Calvert ("Debtor"), seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(2), (4), and (6) as to its particular debt.

By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding; and the court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a).

The ultimate issue for judicial determination here is whether under a totality of the particular circumstances and applicable law, the doctrine of collateral estoppel should be applied when the prior judgment sought to be utilized by BAF to establish the actual and necessary facts leading up to a determination of nondischargeability arises out of its prepetition state court default judgment against the debtor. Put simply, should the prior state court default judgment be given collateral estoppel or issue preclusive effect in this dischargeability proceeding in the federal bankruptcy court?

Based on all of the pleadings, memoranda, statements of counsel, and consideration of the case record as a whole, the court denies BAF's motion for summary judgment. The following shall constitute the court's findings of fact and conclusions of law in accordance with FED.R.BANKR.P. 7052.

The relevant and undisputed background facts and judicial history may be briefly summarized as follows: In December 1991, BAF filed a complaint against the debtor and numerous other named and unnamed defendants in the Municipal Court of the State of California located in Santa Clara County, being Case No. 244081, seeking to recover against the debtor for, among other things, alleged intentional misrepresentation, fraud and deceit, and breach of fiduciary duty. On March 11, 1992, the California State court entered a default judgment against the debtor in the amount of $26,829.59. At the request of BAF, this foreign judgment was enrolled in Tennessee on October 13, 1992, by Order of the Shelby County, Tennessee Circuit Court for the Thirtieth Judicial District at Memphis in Case No. 45473–3 T.D.

On August 8, 1992, the debtor filed an original petition under chapter 13 of the Bankruptcy Code. On December 29, 1993, the debtor converted the chapter 13 case to a case under chapter 7 pursuant to 11 U.S.C. § 1307(a) and FED.R.BANKR.P. 1017(d).

BAF timely filed the underlying adversary proceeding on June 20, 1994, seeking a nondischargeable judgment against the debtor for $26,829.59 pursuant to 11 U.S.C.

§ 523(a)(2),[1] (4),[2] and (6).[3] On July 25, 1994, this court discharged the debtor from all dischargeable debts but reserved the question of the dischargeability of the particular debt owed to BAF. On September 27, 1994, BAF filed the instant motion for summary judgment arising out of its section 523(c) complaint.

The relative positions of the parties may be briefly summarized as follows: Relying on the doctrine of collateral estoppel, BAF contends that the California State court default judgment prevents the debtor from later relitigating, for example, the issue of fraud in the federal bankruptcy court. In contrast, the debtor essentially asserts that the issues surrounding the dischargeability of the debt were not fully, actually, and necessarily litigated in the California lawsuit.

■■■ It is well settled that the doctrine of res judicata or claim preclusion is inapplicable in bankruptcy dischargeability proceedings. *Brown v. Felsen*, 442 U.S. 127, 139, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979). It now is equally clear that the doctrine of collateral estoppel or issue preclusion is applicable in dischargeability proceedings if certain requirements are satisfied. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Sixth Circuit Court of Appeals has squarely addressed the issue of collateral estoppel in bankruptcy dischargeability proceedings and set forth the requirements for

application of the doctrine in this Circuit. *See, for example, Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981), and *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986). *Spilman* succinctly states that "[c]ollateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." 656 F.2d at 228.

The courts within this Circuit have reached different results in applying the doctrine of collateral estoppel to similar background facts. The difficulty in applying the doctrine of collateral estoppel reaches its zenith in situations, such as the instant proceeding, where the underlying prepetition judgment is a default judgment and the defendant later files a bankruptcy case seeking a fresh financial start. *See* 11 U.S.C. § 727(a)(1); FED. R.BANKR.P. 4004(c).

Although *Spilman* did not involve a default judgment, many courts seemingly have seized on one statement contained in its discussion of the "actually litigated" requirement. The Sixth Circuit stated that "[i]f the important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment*, then collateral estoppel does not bar relitigation in the bankruptcy court." *Id.* (emphasis added).

This statement in *Spilman* has been called into question in a series of opinions. *See, for*

1. 11 U.S.C. § 523(a)(2) provides in pertinent part here:
   > (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   > \* \* \* \* \* \*
   > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
   > (B) use of a statement in writing—
   > (i) that is materially false;
   > (ii) respecting the debtor's or an insider's financial condition;
   > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   > (iv) that the debtor caused to made or published with the intent to deceive; or....
   
   11 U.S.C. § 523(a)(2)(A) and (B).

2. 11 U.S.C. § 523(a)(4) provides as follows:
   > (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   > \* \* \* \* \* \*
   > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....
   
   11 U.S.C. § 523(a)(4).

3. 11 U.S.C. § 523(a)(6) provides:
   > (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   > \* \* \* \* \* \*
   > (6) for willful and malicious injury by the debtor to another entity or property of another entity....
   
   11 U.S.C. § 523(a)(6).

*example, In re Byard,* 47 B.R. 700 (Bankr. M.D.Tenn.1985); *In re Seals,* 110 B.R. 331 (M.D.Tenn.1989); *In re Bursack,* 163 B.R. 302 (Bankr.M.D.Tenn.1994); and *In re O'Rourke,* 169 B.R. 383 (M.D.Tenn.1994). The *Byard* court based its holding on principles of full faith and credit under 28 U.S.C. § 1738, and stated that the court should look to what effect the default judgment would have under the law of the state in which it was rendered. 47 B.R. at 707. After finding that Kansas law would give a prior state court default judgment preclusive effect in a subsequent bankruptcy case, the *Byard* court found that application of collateral estoppel was proper. *Id.* at 703.

The *Byard* court's analysis was based on 28 U.S.C. § 1738 and the premise that the bankruptcy context imposes no greater standards for applying full faith and credit than those found in a non-bankruptcy setting. Additionally, the *Byard* court found that if the Sixth Circuit were faced with the question presented in *Spilman* a second time, it would reach a different result.

In *In re Bursack, supra,* the court undertook an extensive analysis of this question and stated that it could not find any compelling reason to depart from the Supreme Court holdings interpreting the applicability of full faith and credit in a non-bankruptcy context. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); and *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The *Bursack* court also stated that a state court judgment should be given preclusive effect in a later bankruptcy proceeding to the same extent the judgment would have a preclusive effect under applicable state law. 163 B.R. at 309. The *Bursack* court criticized, for example, the opinion of *In re Hall,* 95 B.R. 553 (Bankr.E.D.Tenn.1989), and its reliance on *Spilman* in supporting a federal exception to the triggering of state law in determining the applicability of collateral estoppel in a subsequent bankruptcy dischargeability action. *Id.* at 308.

In contrast, other courts have not embraced the above reasoning and have applied deferentially the holding of *Spilman* and the subsequent Sixth Circuit reaffirmance of its holding in *Wheeler, supra. See, for example, In re Hall,* 95 B.R. 553 (Bankr.E.D.Tenn. 1989); *In re Morrison,* 119 B.R. 135 (Bankr. E.D.Tenn.1990); and *In re Stiles,* 118 B.R. 81 (Bankr.W.D.Tenn.1990); *see also In re Mady,* 159 B.R. 487 (Bankr.N.D.Ohio 1993); *In re Kurtz,* 170 B.R. 596 (Bankr.E.D.Mich. 1994); and *In re Stankovich,* 171 B.R. 27 (Bankr.E.D.Va.1994).

*In re Hall, supra,* involved similar background facts to those presented in the instant proceeding. The *Hall* court, unlike the court in *Byard,* had a wealth of precedential and interpretive case law before it. *Hall* evaluated the trilogy of United States Supreme Court opinions addressing the doctrine of collateral estoppel and the relevant Sixth Circuit precedent on the issue and found that there indeed is justification for departing from the general rule that applicable state law should govern the preclusive effect of a state court default judgment when the defendant subsequently commences a case under the Bankruptcy Code, and the plaintiff files a dischargeability action against the defendant/debtor. 95 B.R. at 555–58.

The *Hall* court found support for this position in the language contained in the *Marrese* and *Felsen* Supreme Court cases and also in the fact that the Congress has granted exclusive jurisdiction over section 523(c) dischargeability questions to the federal bankruptcy courts. *Id.* at 555. The *Hall* court also addressed several policy reasons warranting this exception, the most compelling of which are as follows:

> "The policy is that neither a creditor nor a debtor should be required to have dischargeability issues tried in a prebankruptcy lawsuit.

> \*    \*    \*    \*    \*    \*

> "The problem with giving collateral estoppel effect to a default judgment is that it has the effect of forcing a defendant to litigate in state court not to disprove the plaintiff's claim on the merits but to specif-

ically preserve the question of dischargeability in bankruptcy.

\* \* \* \* \* \*

"Requiring either the debtor or creditor to litigate before bankruptcy in order to preserve the question of dischargeability of the alleged debt is contrary to the policy of the bankruptcy law as pointed out in *Brown v. Felsen.*"

*Id.* at 557–58.

To grant BAF's motion for summary judgment in this proceeding, the court must find that there are no genuine issues of material fact in dispute and that the plaintiff, in this instance, is entitled to a nondischargeable judgment as a matter of law. *See, for example, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Applying this summary judgment standard to the totality of the particular circumstances and applicable law of this proceeding, BAF must show, inter alia, that the same issues presented in this proceeding were actually presented in the prior state court action. These issues include the question of whether the debtor obtained money, property, services, or an extension, renewal, or refinancing of credit obtained through false pretenses, false representation or actual fraud; or, if the debtor obtained any of the above by using a materially false statement in writing which concerned his financial condition and on which BAF relied. 11 U.S.C. § 523(a)(2)(A) and (B). (Subparagraph (C) of subsection 523(a)(2) is not applicable to this proceeding in that the debt in question is not a consumer debt but is related to the debtor's prior business.).

The instant complaint also seeks, in the alternative, a determination that the particular debt of BAF is nondischargeable under subsections (a)(4) and (6) of section 523; and thus the issues in the prior California State court lawsuit must, if BAF is to prevail, have involved fraud or defalcation while acting in a fiduciary capacity, embezzlement, larceny, or a willful and malicious injury by the debtor to the person or property of BAF. 11 U.S.C. § 523(a)(4) and (6). Based on the limited certified record provided by BAF from the Municipal Court of the State of California in and for Santa Clara County, analogous issues appear to have been raised in the prior lawsuit, thus satisfying the "same issues" requirement.

The second and more complex question, which will ultimately resolve the motion for summary judgment here, is whether the prior default judgment rendered in the Municipal Court in California can satisfy the "actually litigated" requirement for application of the doctrine of collateral estoppel under a totality of the existing circumstances. As discussed above, the various courts which have addressed the issue clearly are not in agreement as to the resolution of this more complex question. It is this court's opinion that the holding of *Spilman v. Harley, supra,* and those opinions adopting its reasoning (*e.g., In re Hall, supra* ) represent, under these facts and circumstances, the more sound, persuasive, and equitable approach in answering this highly interesting question. This court is of the view that it is difficult, though not entirely impossible, for a prior state court default judgment to satisfy the "actually litigated" requirement to invoke the doctrine of collateral estoppel in a subsequent bankruptcy. Each case brings with it its own unique history and, therefore, should be addressed on it own particular facts and circumstances.

Notably, neither the United States Supreme Court cases of *Migra, Kremer,* nor *Marrese* involved bankruptcy issues.[4] A quote from *Marrese* indicates that the result in a bankruptcy setting might be different than that reached in a non-bankruptcy setting. The Court stated as follows:

> Although for purposes of this case, we need not decide if such an exception exists for federal antitrust claims, we observe that the more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Reso-

---

4. *Migra* and *Kremer* were civil rights actions while *Marrese* involved antitrust litigation.

lution of this question will depend on the **particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action.** Our previous decisions indicate that the primary consideration must be the intent of Congress. *See Kremer, supra,* 456 U.S., at 470–476, 102 S.Ct., at 1891–1894 (finding no congressional intent to depart from § 1738 for purposes of Tile VII); *cf. Brown v. Felsen,* **442 U.S. 127, 138, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979) (finding congressional intent that state judgments would not have claim preclusive effect on dischargeability issues in bankruptcy).**

*Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335 (emphasis added).

This court also notes in this regard the dissimilarity among the facts in the instant proceeding and those in, for example, *Bursack* and *Byard.* In *Bursack* and *Byard* the creditor/plaintiff actually presented evidence in the prior state court proceedings. *See* 163 B.R. at 303 and 47 B.R. at 701. In the instant proceeding, it is expressly emphasized that no suggestion was made to show that BAF presented any actual evidence to the California State court to make out a prima facie showing of, for example, fraud in obtaining the default judgment.

In further addressing the "actually litigated" question and applying the Sixth Circuit *Spilman* factors, the court is required to look to "the whole state court record." 656 F.2d at 228. In *Spilman,* the only record of the prior proceedings the bankruptcy court had before it was a mere copy of the judgment. This court has just slightly more. It has a copy of the complaint filed in the California action, a certified copy of the default judgment, and a copy of the Tennessee Circuit Court order enrolling the California default judgment. *See* Ex. 1, 2, and 3 to BAF's complaint. Although the court has these documents before it, they provide no indication as to whether or not the issues relevant to a determination of nondischargeability under section 523(c) of the Bankruptcy Code were actually litigated in the California State court. Moreover, the California State court default judgment is evidence, in this instance,

that the issues in fact were not actually litigated.

BAF relies on the holding in *Byard, supra,* and several California cases indicating that a default judgment would operate to bar relitigation of these issues under applicable California State law. As stated above, this court, however, avoids a per se rule and is persuaded by the reasoning employed by, among others, the *Hall, Morrison,* and *Stiles* courts. A case-by-case approach is adopted considering a totality of the particular circumstances of each case. As the court in *In re Stiles* held "notwithstanding the fact that this default judgment would be binding on the debtor in a subsequent state court proceeding, the default judgment as to liability is not binding so as to preclude the debtor's [bankruptcy] discharge of the judgment debt." 118 B.R. at 86.

Because this court finds that the "actually litigated" requirement of the doctrine of collateral estoppel has not been sufficiently satisfied in this proceeding, it is unnecessary to address the final requirement of whether the resolution of the issues in the prior state court litigation was "necessary" to a finding of, for example, actual fraud, false pretenses, or a false representation.

■ The principles underlying the "fresh start" also provide compelling reasons here for recognizing an exception to the general rule of applying the doctrine of collateral estoppel or issue preclusion when the prior judgment is a state court default judgment. It is expressly noted that exceptions to the operation of an individual's bankruptcy discharge are strictly construed against the objector and liberally in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). The general philosophy of the laws of Congress relating to bankruptcy is "to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

In *In re Jones,* 490 F.2d 452, 457 (5th Cir.1974), the court stated as follows:

"The Bankruptcy Act was intended to be a sturdy bridge over financially troubled waters by means of which 'the honest but unfortunate debtor' may reach 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' We refuse to make it a treacherous tightrope on which the slightest misstep spells disaster and over which only the most accomplished acrobat can successfully pass."

490 F.2d at 457 (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

In *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) the Court stated:

"[y]et we do not read these statutory words [of the Bankruptcy Act] with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." [5]

Moreover, in *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974), the Supreme Court characterized the bankruptcy court as a "specialized court of equity." *Id.*

The principles underlying the "fresh start" concept, the bankruptcy court's equitable powers exercised within the framework of the Bankruptcy Code, and applicable case law as applied to the totality of the relevant background facts here, all support a conclusion that the doctrine of collateral estoppel should not be applied in this particular proceeding to prevent the debtor from actually litigating on the merits the issues raised and alleged in BAF's bankruptcy complaint pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Accordingly, BAF's motion for summary judgment is denied. A trial on the merits will be scheduled after a final pretrial conference is conducted.

Based on the foregoing findings and conclusions, IT IS HEREBY ORDERED that BAF's motion for summary judgment is DENIED; and NOTICE IS HEREBY GIVEN that a final pre-trial conference in the underlying adversary proceeding is set for March 28, 1995 at 10:30 a.m. in Bankruptcy Courtroom No. 645, 200 Jefferson Avenue, Memphis, Tennessee.

---

5. It is well recognized and this court is mindful that these equitable powers are not without limits. The Supreme Court has instructed that "[w]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).